**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **PEDRO RIVERA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | **3:14-cv-00196 (VLB)** |
| | ) | |
| | ) | |
| **BRIAN FOLEY,** | ) | |
| **EDWARD YERGEAU, &** | ) | |
| **HARTFORD POLICE DEPARTMENT,** | ) | |
| **Defendants.** | ) | **March 23, 2015** |

**MEMORANDUM OF DECISION DENYING IN PART AND GRANTING IN PART**
**DEFENDANTS' MOTION TO DISMISS [Dkt. 20]**

**I.     INTRODUCTION**

　　　　**Pedro Rivera ("Plaintiff") brings this action against Brian Foley ("Officer**

**Foley") in his individual capacity, Edward Yergeau ("Officer Yergeau") in his**

**individual capacity, and the Hartford Police Department (collectively**

**"Defendants"), alleging violations of Plaintiff's Fourth Amendment right to be free**

**from unreasonable seizures and his First Amendment right to freedom of**

**expression pursuant to 42 U.S.C. § 1983.  Currently before the Court is Defendants'**

**Motion to Dismiss Plaintiff's action in its entirety for failure to state a claim upon**

**which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  [Dkt.**

**20.]  For the reasons that follow, Defendants' Motion to Dismiss is DENIED in part**

**and GRANTED in part.**

**II.    FACTUAL BACKGROUND**

　　　　**The following allegations are taken from Plaintiff's Complaint and are**

**deemed to be true for the purpose of this Motion.**

Plaintiff is an individual who resides in the City of Hartford.  [Dkt. 1, Compl. at ¶ 3.]  Plaintiff alleges that he is employed as a photographer and editor at "a local television station."  [*Id*. at ¶ 8.]  Plaintiff further alleges that Officers Foley and Yergeau (collectively "Individual Defendants") are both employed as police officers by the Hartford Police Department.  [*Id*. at ¶¶ 4–5.]  Plaintiff alleges that within the Hartford Police Department, Officer Foley holds the rank of lieutenant and Officer Yergeau holds the rank of sergeant, although Plaintiff does not plead the Hartford Police Department's chain of command or the duties, responsibilities or authorities of the individual officers.  [*Id*.]  Plaintiff alleges that both Officers Foley and Yergeau were acting under color of their authority as police officers at all times relevant to this action.  [*Id*.]  Defendant Hartford Police Department (the "Department") is the municipal police department for the City of Hartford (the "City")[1] and is maintained by the City for the protection of persons within its municipal boundaries.  [*Id*. at ¶ 6.]

Plaintiff alleges that on February 1, 2014, "he heard on a police scanner that there was a serious motor vehicle accident in the City of Hartford."  [*Id*. at ¶ 7.] Plaintiff alleges that he subsequently "responded" to the accident site and began operating his personally owned "drone," which Plaintiff describes as a remote-controlled model aircraft outfitted for recording aerial digital images, to record visual images of the accident scene.  [*Id*.]  Plaintiff alleges that "at all times relevant," Plaintiff was "standing outside of the area denoted as the "crime scene" by officers responding to the accident . . . in a public place, operating his device in

---

[1] Plaintiff does not name the City as a defendant, but alleges that it is "a municipal entity organized and operating under the laws of the State of Connecticut."  [*Id*. at ¶ 6.] See *infra*, Part IV.B.

public space, observing events that were in plain view." [*Id.*]  However, Plaintiff's Complaint also makes it clear that from his position, Plaintiff maneuvered his drone into the demarcated crime scene area by causing it to "hover over the accident scene . . . at an altitude of 150 feet." [*Id.*]

Plaintiff alleges that at some point, Officer Yergeau and "other uniformed members of the Hartford Police Department"[2] at the scene of the accident "surrounded [him], demanded his identification card, and asked him questions about what he was doing." [*Id.* at ¶ 10.]  Plaintiff alleges that he informed Officer Yergeau and the other police officers that he was a photographer and editor at a local television station, but that he was not acting as an employee of the television station at the time.  [*Id.* at ¶ 8.]  Plaintiff alleges that he also acknowledged to Officer Yergeau and the other police officers that "he does, from time to time, forward the video feed from his drone to the television station for which he works." [*Id.* at ¶ 9.]  Plaintiff alleges without further elaboration that he "did not feel as though he were free to leave during the course of this questioning."  [*Id.* at ¶ 10.]

Plaintiff alleges that Officer Yergeau and the other police officers demanded that he cease operating the drone over the accident site and leave the area.  [*Id.* at ¶ 11.]  Plaintiff denies being in violation of any state or federal law or regulation at the time he was allegedly stopped and told to leave.  [*Id.* at ¶¶ 12–13.]  Plaintiff also alleges that he did not need legal approval to operate his drone, and that as a result "[t]here was no probable cause, or arguable probable cause" to believe

---

[2] Plaintiff does not name the "other uniformed members of the Department" as defendants.

Plaintiff was violating any laws at the time he was stopped by Officer Yergeau. [*Id.* at ¶¶ 14–15.]

Plaintiff alleges that immediately after he was ordered to leave the accident site, Officer Foley contacted Plaintiff's employer and spoke to one of Plaintiff's supervisors.[3] [*Id.* at ¶ 17.] During this phone call, Plaintiff alleges that Officer Foley "complained" to Plaintiff's supervisor that Plaintiff had interfered with the Department's investigation at the accident site and compromised "the crime scene's 'integrity.'" [*Id.* at ¶ 17.] Plaintiff further alleges, upon information and belief, that Officer Foley "either requested that discipline be imposed upon the plaintiff by his employer, or suggested that the employer could maintain its goodwill with the employer [sic] by disciplining the plaintiff." [*Id.*] Plaintiff alleges that "[a]s a direct and proximate result" of Officer Foley's contact with Plaintiff's employer, Plaintiff was suspended from work "for a period of at least one week." [*Id.* at ¶ 18.]

Plaintiff claims that Defendants' acts constitute violations of his First and Fourth Amendment rights, and that as a "direct and proximate result" of Defendants' actions, he has suffered constitutional injury and damages in the form of emotional distress and a lost week of wages. [*Id.* at ¶ 22.] Plaintiff now seeks compensatory damages; punitive damages against the Individual Defendants; declaratory relief establishing that his operation of a remote-controlled model aircraft in the manner and means herein described is not a violation of any federal, local or state law or regulation; injunctive relief forbidding the Department from

---

[3] Plaintiff does not allege, and the Complaint does not indicate, that Officer Foley was present at the accident site.

interfering with the lawful operation of drones within city limits;[4] and attorney's
fees pursuant to 42 U.S.C. § 1988.

## III.   STANDARD OF REVIEW

"'To survive a motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to state a claim to relief that is plausible on its face.'"
*Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009)).  While Rule 8 of the Federal Rules of Civil Procedure does not
require detailed factual allegations, "[a] pleading that offers 'labels and
conclusions' or 'formulaic recitation of the elements of a cause of action will not
do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of
'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (internal citations and
quotation marks omitted).  "Where a complaint pleads facts that are 'merely
consistent with' a defendant's liability, it 'stops short of the line between
possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Bell Atl. Corp. v.
Twombly,* 550 U.S. 544, 557 (2007)).  A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."  *Id.* (internal
citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court
should follow a "two-pronged approach" to evaluate the sufficiency of the
complaint.  *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can
choose to begin by identifying pleadings that, because they are no more than

---

[4] The Court notes that the injunction Plaintiff seeks is overbroad and plainly
beyond the scope of this case, and that Plaintiff has asserted no basis for standing
to demand such relief.

conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949–50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663–64 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal quotation marks omitted).

## IV.   DISCUSSION

In his undifferentiated Complaint, Plaintiff alleges generally that Defendants violated Plaintiff's "Fourth Amendment right to be free from unreasonable seizures" and his "First Amendment right to freedom of expression" under 42 U.S.C. § 1983 [Dkt. 1 at ¶¶ 1–2.] Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States. See 42 U.S.C. § 1983; *see, e.g., Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Id.* (internal citations omitted). Thus, to prevail on a Section 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. *Id.*

In his Complaint, Plaintiff failed to properly articulate the alleged deprivations he claims as separate counts under 42 U.S.C. § 1983. However, the

Court will construe Plaintiff's Complaint to allege five constitutional violations, to wit: 1) violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizure, as a result of Officer Yergeau's actions toward Plaintiff at the accident site [Dkt. 1 at ¶¶ 10–15]; 2) violation of Plaintiff's First Amendment freedom of speech as a result of Officer Yergeau's acts to prevent him from recording police activity [*id.* at ¶ 21]; 3) violation of Plaintiff's First Amendment right to assemble at the accident site and "monitor[ ] the police response to a motor vehicle accident" as a result of Officer Yergeau's alleged order to leave the accident site [*id.* at ¶¶ 11–16]; 4) retaliation against Plaintiff for exercising his First Amendment right to assemble at the accident site and record police activity [*id.* at ¶¶ 17–21]; and 5) violation of Plaintiff's First Amendment right to freedom of the press as a result of Officer Foley's actions to compel Plaintiff's suspension from his job as a photographer and editor at a local television station.  [*Id.*]

In response, Defendants move for dismissal on several grounds, arguing that A) the Department lacks the legal capacity to be sued pursuant to Section 1983; B) assuming Plaintiff intended to sue the City, Plaintiff fails to state a claim under *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978); C) Plaintiff's claims against the Individual Defendants are barred on the basis of qualified immunity; and D) Plaintiff's claims against the Individual Defendants are insufficiently pled. [Defs.' Mot. Dismiss, Dkt. 20 at 4–5, 6–7, 24–28.]  The Court addresses each of these arguments below.

A.     DEPARTMENT'S CAPACITY TO BE SUED UNDER 42 U.S.C. § 1983

Plaintiff asserts that "[t]he City of Hartford's Police Department maintains a policy, practice and custom of seeking to prevent citizens from filming their

conduct at arrests, at the scene of criminal investigations, and at accident scenes[,]" and that the Department's actions constitute violations of Plaintiff's constitutional rights.  [Dkt. 1 at ¶ 21.]  Defendants contend that the Department is not a legal entity with capacity to be sued pursuant to Section 1983.  [Dkt. 20 at 4–5.]  Defendants are correct, and Plaintiff's claims against the Department must be dismissed.

"In determining whether the arm of a municipality may be sued, courts look to state law."  *Mesa v. City of New York*, No. 09-CIV-10464-JPO, 2013 WL 31002, at *8 (S.D.N.Y. Jan. 3, 2013) (citing Fed. R. Civ. P. 17(b)(3)). The Hartford Police Department is a municipal police department "responsible for the preservation of the public peace, prevention of crime, apprehension of criminals, protection of the rights of persons and property . . . ."  Hartford, Conn. Charter ch. VIII, § 5.  It is well established that a municipal police department is not a municipality.  *See, e.g.*, *Hasfal v. City of Hartford*, No. 06-CV-55-CFD, 2007 WL 2009790, at *3 (D. Conn. July 6, 2007).  "Rather, it is a sub-unit, agency or instrumentality of the municipality through which the municipality fulfills its policing function."  *Id.*  As a mere instrumentality of the municipality, the Department is not a separate legal entity; thus, it lacks the capacity to be sued under Section 1983.  *Id.*; *see also, e.g.*, *Barreto v. Hartford Hosp.*, 08-CV-1912-AVC, 2009 WL 3769350, at *2 (D. Conn. Nov. 9, 2009) (holding that the Hartford Police Department is not subject to suit under Section 1983).  Therefore, Plaintiff's claims against the Department are DISMISSED.

B.    CITY OF HARTFORD'S LIABILITY UNDER 42 U.S.C. § 1983

From the allegations on the face of the Complaint, it appears that Plaintiff may have intended to assert its claims against the City.  [*See* Dkt. 1 at ¶ 6.]  Unlike

the Department, the City *is* a municipality subject to suit pursuant to Section 1983. *See Monell*, 436 U.S. at 690; *see, e.g.*, *Hernandez v. Connecticut Ct. Support Services Div.*, 726 F. Supp. 2d 153, 156 (D. Conn. 2009).  However, "a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents."  *Monell*, 436 U.S. at 694. "In order to prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91).  The official policy requirement can be satisfied "if a plaintiff proves the municipality violated a federally protected right through (1) municipal policy, (2) municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority."  *Zherka v. DiFiore*, 412 Fed. Appx. 345, 348 (2d Cir. 2011) (citing *Monell*, 436 U.S. at 695).  For example, *Monell's* policy or custom requirement can be established by alleging that "a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions."  *Reynolds v. Guiliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

In his Complaint, Plaintiff conclusorily alleges that the Individual Defendants' actions were undertaken under cloak of "a policy, practice, or custom of seeking to prevent citizens from filming [police] conduct at arrests, at the scene of criminal investigations, and at accident scenes."  [Dkt. 1 at ¶ 21.]  However, as

Defendants point out, even if Plaintiff had properly attributed this policy to the City, the allegation itself is no more than a formulaic recitation of *Monell* liability devoid of any facts that could support a claim against the City.  [Dkt. 20 at 6–7.]  Plaintiff has failed to allege facts to support the inference that, for example, the City acquiesced in or tacitly authorized the Individual Defendants' alleged conduct (e.g., by virtue of the fact that the City had prior notice of a pattern of this kind of misconduct), or that either of the Individual Defendants was a municipal policymaker with "final policymaking authority."  *See Zherka*, 412 Fed. Appx. at 348.  Accordingly, to the extent that Plaintiff seeks to allege a *Monell* claim against the City, that claim is also DISMISSED.

## C.    INDIVIDUAL DEFENDANTS' QUALIFIED IMMUNITY

Defendants also argue that Plaintiff's claims against Officers Foley and Yergeau must be dismissed, on the ground that the Individual Defendants are entitled to qualified immunity.  [Dkt. 20 at 24–28.]  "In a [S]ection 1983 case, a municipal officer performing discretionary functions may be shielded from liability in his individual capacity based on qualified immunity."  *Williams v. Lopes*, 64 F. Supp. 2d 37, 41 (D. Conn. 1999) (citing *Shechter v. Comptroller of New York*, 79 F.3d 265, 268–69 (2d Cir.1996)).  "The purpose of qualified immunity is to protect officials when they must make difficult 'on-the-job' decisions."  *Aho v. Anthony*, 782 F. Supp. 2d 4, 8 (D. Conn. 2011) (citing *Zieper v. Metzinger*, 474 F.3d 60, 71 (2d Cir. 2007)).

"Although qualified immunity is an affirmative defense, 'it may be asserted in a motion to dismiss under Rule 12(b)(6) of the Rules of Civil Procedure as long as the defense is based on facts appearing on the face of the complaint.'"

*Terebesi v. Solomon*, No. 09-CV-1436-JBA, 2010 WL 3926108, at *4 n. 2 (D. Conn. Sept. 30, 2010) (citing *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008)). "Indeed, because qualified immunity protects officials not merely from liability but from litigation, qualified immunity issues should be resolved when possible on a motion to dismiss, 'before the commencement of discovery,' to avoid subjecting public officials to time consuming and expensive discovery procedures." *Garcia v. Does*, ── F.3d ──, 2015 WL 737758, at *9 (2d Cir. Feb. 23, 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). However, "[w]hen a party asserts qualified immunity in a motion to dismiss, the defense faces a formidable hurdle and must accept the more stringent standard applicable to this procedural route." *Id.* (quoting *McKenna v. Wright*, 386 F.3d 432, 434, 436 (2d Cir. 2004)) (internal quotation marks omitted).

"District [c]ourts utilize a two-part inquiry to determine when qualified immunity bars a suit against government officials." *Belanger v. City of Hartford*, 578 F. Supp. 2d 360, 365 (D. Conn. 2008). "The two-pronged qualified-immunity inquiry asks whether 'the facts alleged show the officer's conduct violated a constitutional right,' and if so, 'whether the right was clearly established,' such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Terebesi*, 2010 WL 3926108, at *4 (quoting *Saucier v. Katz,* 533 U.S. 194, 201–202 (2001)). "The analysis may take place in any order 'in light of the circumstances in the particular case at hand.'" *Id.* (quoting *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)) (internal citations omitted). "Thus, qualified immunity protects a defendant if '(1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer

to believe his conduct did not violate a clearly established constitutional right.'" *Id.* (quoting *Hartline v. Gallo,* 546 F.3d 95, 102 (2d Cir. 2008)).

In a case relied upon by Plaintiff, the Eleventh Circuit Court of Appeals explained the doctrine of qualified immunity, noting its prior pronouncements that "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.  Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.  If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Williamson v. Mills*, 65 F.3d 155, 157 (11th Cir. 1995) (quoting Eleventh Circuit cases) (internal citations and quotation marks omitted).  Second Circuit jurisprudence is on all fours with this interpretation, such that the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Garcia v. Does*, 2015 WL 737758, at *5 (citing *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).  Therefore, in order to be "clearly established," a right "must be sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right.'" *Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir. 2012) (quoting *Reichle v. Howards*, ─── U.S. ───, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (brackets and internal quotation marks omitted) (emphasis added).  In other words, existing precedent of the Supreme Court and Second Circuit "must have placed the . . . constitutional question . . . beyond debate." *Plumhoff v. Rickard*, ───–U.S. ───, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014).  Furthermore, [t]he

"objectively reasonable test" that guides the second part of the inquiry is satisfied as long as officers of "reasonable competence" could disagree on the legality of the defendant officer's actions. *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998).

1.  **Qualified Immunity from Plaintiff's Fourth Amendment Claim**

Defendants assert that Plaintiff's Fourth Amendment claim against the Individual Defendants should be dismissed because (a) Officer Yergeau is qualifiedly immune from such a claim, and (b) "[t]here are no allegations which would support a Fourth Amendment seizure claim against Defendant Foley". [Dkt. 20 at 18–22.]

The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated…." U.S. Const. amend. IV.  A person has been 'seized' within the meaning of the Fourth Amendment "when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). This includes "'seizures' . . . which do not eventuate in a trip to the station house and prosecution for crime" such as a brief investigatory stop commonly referred to as a *Terry* stop.  *See Terry v. Ohio*, 392 U.S. 1, 16 (1968).  The right to be free from unreasonable seizures by law enforcement is clearly established.  *See, e.g., Terry*, 392 U.S.at  9 ("No right is more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law."); *Clynch v. Chapman*, 285 F. Supp. 2d 213, 228

13

(D. Conn. 2003) ("it is clearly established that an officer cannot effect a *Terry* stop where there is no suggestion of criminal activity . . . .").  Thus, in order for a *Terry* stop to comply with the Fourth Amendment, it must be based on "a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause."  *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 30) (internal quotation marks omitted).  Reasonable suspicion has been defined as something "more than an inchoate and unparticularized suspicion or hunch," but less than probable cause.  *Id.* (internal quotation marks omitted).

### a.  Plaintiff's Fourth Amendment Claim against Officer Yergeau

The Court finds that Plaintiff has pled sufficient facts to allege the occurrence of a *Terry* stop.  Whether a stop has taken place depends on whether, "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."  *Florida v. Bostick*, 501 U.S. 429, 437 (1991).  The Second Circuit has held that the following non-inclusive factors are indicative of a "seizure":

> the threatening presence of several officers; the display of a weapon; the physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by the officer to accompany him to the police station or a police room.

*U.S. v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992) (citing *United States v. Lee*, 916 F.2d 814, 819 (2d Cir. 1990)).  Ultimately, the inquiry "is an objective assessment of

the overall coercive effect of the police conduct." *Lee*, 916 F.2d at 819 (internal citation omitted).

Here, Plaintiff alleges that Officer Yergeau and the other officers approached him, surrounded him, demanded to see his identification card, and asked him questions about what he was doing.  [Dkt. 1 at ¶ 10.]  Additionally, Plaintiff alleges that Officer Yergeau demanded that Plaintiff cease operating his drone over the accident site and leave the area.  [*Id.* at ¶ 11.]  The Court finds that this conduct would have communicated to a reasonable person in the Plaintiff's position that he was not at liberty to ignore Officer Yergeau, and thus that the Complaint alleges enough factual content to support Plaintiff's contention that he "did not feel as though he were free to leave during the course of this questioning."  [*Id.* at ¶ 10.]

However, the conclusion that Plaintiff was seized does not end the inquiry. As stated *supra*, a *Terry* stop is lawful where an officer has a reasonable suspicion, based on specific and articulable facts, of unlawful conduct.  *Sokolow*, 490 U.S. at 7.  In determining whether reasonable suspicion exists, the court must consider the "totality of the circumstances—the whole picture . . . .[and] [b]ased upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."  *U.S. v. Cortez*, 449 U.S. 411, 417–18 (1981).  Those circumstances should be evaluated "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training."  *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000) (quoting *United States v. Oates*, 560 F.2d 45, 61 (2d Cir. 1977)).

The facts in the Complaint suggest that under the circumstances, Officer Yergeau possessed a particularized and objective basis for suspecting that

Plaintiff was engaged in unlawful conduct and thus for initiating a brief investigative stop.  Plaintiff's operation of an unusual and likely unidentified device into a cordoned-off area at the scene of a major motor vehicle accident and ongoing police investigation provides arguable reasonable suspicion that Plaintiff was interfering with police activity.  *See, e.g.* Conn. Gen. Stat. Ann. § 53a-167a (making it a misdemeanor to interfere with an officer in the performance of his duties).   At the very least, the facts alleged in the Complaint are sufficient to establish that police officers of reasonable competence could disagree on the legality of Officer Yergeau's actions.  *See Tierney*, 133 F.3d 189 at 196.  Although Plaintiff alleges that "[t]here was no probable cause, or arguable probable cause, to believe that the plaintiff was in violation of any law or regulatory requirement," this statement is both conclusory and inapposite.  [Dkt. 1 at ¶ 15.]   As already stated, "the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause."  *Sokolow*, 490 U.S. at 7.  The Court finds that it was 'objectively reasonable' for Officer Yergeau to believe he had the requisite reasonable suspicion to stop and question Plaintiff, such that his seizure of Plaintiff did not violate Plaintiff's Fourth Amendment rights.  As a result, Officer Yergeau is qualifiedly immune from Plaintiff's Fourth Amendment claim, and Plaintiff's Fourth Amendment claim against him must be dismissed.  Furthermore, to the extent that Plaintiff intended to name the other police officers at the accident site as defendants, the claims against those officers must be dismissed on the same basis.

   b.  **Plaintiff's Fourth Amendment Claim against Officer Foley**

In order to state an unreasonable seizure claim against Officer Foley, Plaintiff must allege facts to support the conclusion that Officer Foley restrained Plaintiff's freedom of movement by means of physical force or a show of authority. *See Mendenhall*, 446 U.S. at 553.  Only when a police officer restrains an individual's freedom of movement by means of physical force or a show of authority "is there any foundation whatever for invoking constitutional safeguards."  *Id.*  Plaintiff does not allege that Officer Foley was present at the accident site and alleges no other facts to support a claim that Officer Foley violated his Fourth Amendment rights.   Plaintiff's Fourth Amendment claim against Officer Foley is therefore also dismissed.

### 2.   Qualified Immunity from Plaintiff's First Amendment Claims

As noted *supra*, Plaintiff's Complaint appears to allege four discrete injuries that he claims constituted violations of his First Amendment rights.  First, Plaintiff contends that Officer Yergeau's order to stop flying his drone at the accident site constituted a violation of his First Amendment right to record police activity.  [*Id.* at ¶ 21.]  Second, Plaintiff claims that Officer Yergeau's order to leave the accident site violated his First Amendment right to peaceably assemble at the crime scene and "monitor[ ] the police response to a motor vehicle accident."  [*Id.* at ¶¶ 11–16.] Plaintiff's Complaint further suggests that Officer Foley then retaliated against him for exercising these First Amendment rights by calling Plaintiff's employer and suggesting Plaintiff needed to be disciplined for his conduct at the accident site. [*Id.* at ¶¶ 17–20.]  Finally, the Court construes the Complaint to assert facts suggesting a claim that Officer Foley's alleged phone call to Plaintiff's employer

also violated Plaintiff's First Amendment freedom of the press by causing his suspension from his job as photographer and editor.  [*Id.* at ¶¶ 17–20.]

a.  **Plaintiff's Right to Record Police Activity**

Defendants argue that they are entitled to qualified immunity on this claim because the right to record police activity has not been recognized as a clearly established right in the Second Circuit.  [Dkt. 20 at 27–28.]  The Court agrees and finds that here, "beginning with a 'discussion of why the relevant facts do not violate clearly established law . . . make[s] it apparent that in fact the relevant facts do not make out a constitutional violation at all.'"  *Harwe v. Floyd*, No. 09-CV-1027-MRK, 2011 WL 674024, at *8 (D. Conn. Feb. 17, 2011) *aff'd*, 545 Fed. Appx. 20 (2d Cir. 2013) (quoting *Pearson*, 555 U.S. 223 (2009)).

"We look to Supreme Court and Second Circuit precedent existing at the time of the alleged violation to determine whether the conduct violated a clearly established right."  *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009).  At the time of the acts alleged in the Complaint, the right to photograph and record police officers who are engaged in an ongoing investigation was not clearly established as a matter of constitutional law in this Circuit.  *See Mesa*, 2013 WL 31002, at *25 ("While district court decisions in this Circuit have dealt with similar cases involving both recordation and disorderly conduct prosecution, no Second Circuit case has directly addressed the constitutionality of the recording of officers engaged in official conduct.").  Other circuits are split on this issue.  The First Circuit, Seventh Circuit, Eleventh Circuit, and Ninth Circuit all recognize that the First Amendment protects the photography and recording of police officers engaged in their official duties.  *Id.*  The Third

Circuit and the Fourth Circuit take the contrary approach. *Id.* However, "[w]hen neither the Supreme Court nor this [C]ourt has recognized a right, the law of our sister circuits and the holdings of district courts cannot act to render that right clearly established within the Second Circuit." *Pabon v. Wright*, 459 F.3d 241, 255 (2d Cir. 2006) (citing *Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir.2003)).

Moreover, the Court notes that in cases where the right to record police activity *has* been recognized by our sister circuits, it appears that the protected conduct has typically involved using a handheld device to photograph or videotape at a certain distance from, and without interfering with, the police activity at issue. *See, e.g., Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011) ("[T]he complaint indicates that Glik filmed the officers from a comfortable remove and neither spoke to nor molested them in any way . . . . Such peaceful recording of an arrest in a public space that does not interfere with the police officers' performance of their duties is not reasonably subject to limitation."); *Am. Civ. Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012) ("While an officer surely cannot issue a "move on" order to a person *because* he is recording, he police may order bystanders to disperse for reasons related to public safety and order and other legitimate law-enforcement needs. . . .  Nothing we have said here immunizes behavior that obstructs or interferes with effective law enforcement or the protection of public safety.") (emphasis in original).  By contrast, here Plaintiff directed a flying object into a police-restricted area, where it proceeded to hover over the site of a major motor vehicle accident and the responding officers within it, effectively trespassing onto an active crime scene. *See, e.g., U.S. v. Causby*, 328 U.S. 256, 266 (1946) (holding that invasions to

airspace situated within "the immediate reaches" of land—including airspace so close to the land that invasions of it affect the use and enjoyment of the surface of the land—are in the same category as invasions to the land itself).  Even if recording police activity were a clearly established right in the Second Circuit, Plaintiff's conduct is beyond the scope of that right as it has been articulated by other circuits.

In sum, the Individual Defendants are entitled to qualified immunity with respect to Plaintiff's First Amendment claim concerning the right to photograph police activity.

b.  Plaintiff's Right to Assemble at the Accident Site

Defendants argue, in sum and substance, that although "Plaintiff does have a right to assemble . . . this right has certain limits[,]" and that Officer Yergeau's decision to order that Plaintiff leave the accident site was an objectively reasonable exercise of his authority to enforce a time, place and manner regulation, which renders Officer Yergeau qualifiedly immune from this claim. [Dkt. 20 at 15–17.]

The First Amendment declares in part that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble."  U.S. Const. amend. I.  However, it is well settled that even in a traditional public forum, defined as a forum that has "traditionally been available for public expression," the government may impose content-neutral time, place and manner restrictions "so long as those restrictions are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communications."  *Hotel Emps. & Rest. Emps. Union, Local 100 v. City of New*

*York Dep't. of Parks & Rec.*, 311 F.3d 534, 544–45 (2d Cir. 2002); *see, e.g.*, Conn. Gen. Stat. Ann. § 53a-182 (disorderly conduct); Conn. Gen. Stat. Ann. § 53a-167a (interference with an officer in the performance of his duties).

Plaintiff contends that Officer Yergeau's order to leave the accident site constitutes an infringement of Plaintiff's broadly stated First Amendment right to "congregate in public and engage in lawful activities." [Dkt. 27 at 7.] However, Plaintiff does not offer any support for the proposition that Plaintiff has a clearly established First Amendment right to assemble at the scene of an active police investigation and fly an unidentified object into a designated crime scene; nor has the Court been able to identify any Second Circuit precedent acknowledging such a right. To be "clearly established," the right "must have been recognized in a particularized rather than a general sense," *Sira v. Morton*, 380 F.3d 57, 81 (2d Cir. 2004); *see also DiStiso v. Cook*, 691 F.3d 226, 229 (2d Cir. 2012) (holding that a court's determination of whether the right at issue is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition") (internal citation and quotation marks omitted).

However, even assuming arguendo that Plaintiff could assert a clearly established right to assemble at the scene of an active police investigation, and regardless of whether Officer Yergeau's order to disperse was a permissible content-neutral time, place, manner restriction on that right, Officer Yergeau is still entitled to qualified immunity. *See, e.g., Zalaski v. City of Hartford*, 838 F. Supp. 2d 13, 46–47 (D. Conn. 2012), *aff'd in relevant part*, 723 F.3d 382 (2d Cir. 2013). This is because, contrary to Plaintiff's contention [Dkt. 27 at 7], the question before the Court when determining the question of qualified immunity from a First

Amendment claim is not whether a time, place or manner restriction was reasonable, but "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 47 (citing *Saucier*, 533 U.S. at 202). Here, the Court finds that it was objectively reasonable for Officer Yergeau to believe that it *was* within his authority to require Plaintiff, who based on the facts alleged was trying to gain access to an area from which the public was prohibited, and behaving in a manner likely to disrupt or distract law enforcement officers at an active crime scene, to disperse from the accident site. On the facts alleged, it is also plausible that Officer Yergeau had a reasonable belief that Plaintiff's conduct at the accident site posed a risk to the integrity of the crime scene or of interference with the responding officers, and that Officer Yergeau had the lawful authority to prevent those risks. Thus, Officer Yergeau is entitled to qualified immunity with respect to Plaintiff's right to assemble claim.

D.   **FIRST AMENDMENT RETALIATION**

Defendants have construed Plaintiff's allegations regarding Officer Foley's phone call to Plaintiff's employer as a Section 1983 First Amendment retaliation claim, and argue that Plaintiff has failed to adequately plead facts suggesting Defendants possessed the requisite retaliatory intent. [Dkt. 20 at 7–15.]

In order to allege a First Amendment retaliation claim when the plaintiff is "a private citizen who sued a public official," the plaintiff must establish "'(1) [the plaintiff] has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.'"

*Williams v. Town of Greenburgh,* 535 F.3d 71, 76 (2d Cir. 2008) (quoting *Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir. 2001).

Here, the Court finds that Plaintiff's Complaint cannot sustain a First Amendment retaliation claim because, as already discussed, Plaintiff has failed to allege that his conduct at the accident site constituted activity protected by the First Amendment. *See infra*, Part IV.C.2. As a result, he cannot establish the predicate constitutional interest necessary to satisfy the first element of a retaliation claim. *See, e.g., Porat v. Lincoln Towers Community Ass'n,* 04 CIV. 3199 (LAP), 2005 WL 646093, at *5 (S.D.N.Y. Mar. 21, 2005) *aff'd*, 464 F.3d 274 (2d Cir. 2006) (holding that Plaintiff failed to satisfy the first element of the First Amendment retaliation standard because his activity was not an interest protected by the First Amendment). Because Plaintiff's claim cannot be sustained on this theory regardless of whether Plaintiff has alleged the requisite motive, the Court does not reach that issue. Furthermore, because Plaintiff has not made out a *prima facie case* of First Amendment retaliation, this Court need not reach the issue of whether the Individual Defendants are entitled to qualified immunity. *See, e.g., Ford v. Reynolds*, 326 F. Supp. 2d 392, 403 (E.D.N.Y. 2004), *aff'd*, 167 Fed. Appx. 248 (2d Cir. 2006).

E.    PRIOR RESTRAINT

The Court does find, however, that the facts Plaintiff alleges regarding Individual Defendants' actions after Plaintiff left the accident site constitute a claim for unlawful prior restraint of Plaintiff's First Amendment right to freedom of the press. Although Defendants did not address this claim in their Motion to Dismiss, the Court is not bound to Defendants' partial construction. Rather, the Court is

obligated to construe the undifferentiated Complaint so as to do justice.  *See* Fed.
R. Civ. P. 8(e);  *see also Lomartira v. Am. Auto. Ins. Co.*, 245 F. Supp. 124, 129 (D.
Conn. 1965) *aff'd*, 371 F.2d 550 (2d Cir. 1967) ("[T]he underlying spirit of the Federal
Rules [is] that cases should be decided upon their merits, rather than upon
technical deficiencies . . . .").

A prior restraint on speech is an official government action that suppresses
speech on the basis of the speech's content and in advance of its actual
expression.  *See, e.g.*, *New York Times Co. v. United States*, 403 U.S. 713, 714
(1971); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 552–53 (1975).  It
has long been established that such restraint constitutes "the most serious and
the least tolerable infringement" on our freedoms of speech and press and
"bear[s] a heavy presumption against its constitutional validity."  *Nebraska Press
Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *Bantam Books v. Sullivan*, 372 U.S. 58, 70
(1963).  Regardless of the form of the government regulation, courts will examine
its operation and effect on First Amendment rights to determine its
constitutionality, so that even sanctions short of actual suppression may
constitute a prior restraint if they exercise a sufficient chilling effect on protected
speech.  *See Bantam Books*, 372 U.S. at 67.

Reading the Complaint liberally, the Court finds that Plaintiff has alleged
sufficient facts to support a claim that Officer Foley acted to suppress Plaintiff's
right to freedom of the press when he contacted Plaintiff's employer and
threatened to withhold the "goodwill" of the Department if Plaintiff was not
"disciplined," resulting in Plaintiff's suspension from his job as a photographer
and editor.  [Dkt. 1 at ¶¶ 17–18.]  Unlike Officer Yergeau's restraints upon Plaintiff's

conduct at the accident site, which did not implicate constitutionally protected activity, Officer Foley's alleged actions after Plaintiff left the crime scene operated as a restraint on Plaintiff's subsequent right to work as a member of the press and therefore to gather and report on the news.

It is beyond dispute that this activity is protected under the First Amendment, and indeed, "basic to the existence of constitutional democracy." *Branzburg v. Hayes*, 408 U.S. 665, 727 (1972). Even a "cantankerous press, an obstinate press, [and] an ubiquitous press" are critical to the flow of information and opinions to the public. *United States v. New York Times Co.*, 328 F. Supp. 324, 331 (S.D.N.Y.), *rev'd*, 444 F.2d 544 (2d Cir. 1971) (en banc), *rev'd*, 403 U.S. 713 (1971) (per curiam). Furthermore, it is clearly established that implicit in the right to publish the news is the right to gather the news, and that "[w]ithout some protection for seeking the news, freedom of the press could be eviscerated." *Branzburg*, 408 U.S. at 681. In this context, qualified immunity is not appropriate, as Defendants cannot credibly contend that it was 'objectively reasonable' for Officer Foley to believe that he was not violating Plaintiff's First Amendment right when he allegedly contacted Plaintiff's employer to compel Plaintiff's suspension. Nor is it plausible to suggest that, on the face of the Complaint, officers of reasonable competence could disagree on the legality of such an action. Accordingly, the Court finds that Officer Foley is not entitled to qualified immunity on these allegations, and Plaintiff's claim on these facts will be sustained.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Dkt. 20] is GRANTED in part and DENIED in part. The Court construes Plaintiff's Complaint to

allege a Section 1983 prior restraint claim against Officer Foley based on Plaintiff's allegations that Officer Foley acted to compel Plaintiff's suspension from his job as a photographer and editor.  The Individual Defendants have twenty-eight (28) days from the date of this order to file a motion to dismiss on this issue.  In all other respects, Defendants' Motion to Dismiss is GRANTED, and the Clerk is directed to dismiss Defendants Hartford Police Department and Officer Yergeau from this case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 23, 2015